IN RE ESTATE OF LIZZIE WITTE.
WILLIAM WITTE, JR., APPELLANT, v. AUGUST WITTE
ET AL., APPELLEES.
16 N. W. 2d 203

FILED NOVEMBER 3, 1944. No. 31731.

*Moran & James,* for appellant.

*Lloyd E. Peterson* and *Betty Jean Peterson, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

This proceeding originated in the county court of Otoe county, Nebraska, and was for the probate of the last will and testament of Lizzie Witte, deceased. In the county court the will was objected to but was admitted to probate over the objections. From this admission to probate an appeal was taken to the district court where on a trial to a jury a verdict was returned finding that the instrument in question was not the last will and testament of the said Lizzie Witte, deceased. Judgment was entered on the verdict. From this verdict and judgment the proponent has appealed. William Witte, Jr., is the proponent and appellant here. August Witte, Edward Witte, Paul Witte, Harry Witte, Frieda Witte, Minnie Witte and Martha Witte Harpster are the objectors and appellees.

Lizzie Witte died on or about the 31st day of January, 1942, leaving as her children and heirs at law the appellant and appellees. On October 16, 1941, she made and executed a will whereby she disposed of her estate. The appellant was appointed executor by the will.

On February 4, 1942, appellant, by petition filed in the county court, offered the said will for probate.

On March 14, 1942, all of the appellees joined in objections to the will. The objections were substantially the following: That the instrument offered for probate was not executed as provided by law; the instrument was not properly attested; that at the time the instrument was signed Lizzie Witte was under the undue influence of appellant and his wife, Clara Witte, and thus the contestants were deprived of their fair share of the property and estate; and that at the time of the making of the will Lizzie Witte did not have sufficient physical and mental strength and busi-

ness ability to understand the purport of said instrument and that by reason thereof she made an inequitable distribution of her estate.

In the district court only two grounds of objection were submitted for decision and determination. The two were undue influence and the mental capacity of the deceased.

The appellant sets forth numerous assignments of error which he contends are grounds for reversal. The first to which attention will be directed is in substance an assertion that the court erred in submitting the question of undue influence for determination by the jury, it being the contention that there was no evidence supporting this objection.

The applicable rule in case a will is objected to on the ground that it was executed under undue influence is that the will may not be rejected on this ground unless the evidence of the objector establishes that the testator was subject to undue influence, that the opportunity to exercise it existed, that there was a disposition to exercise it, and that the result appears to be the effect of such influence. *Gidley v. Gidley*, 130 Neb. 419, 265 N. W. 245; *Smith v. Black*, 143 Neb. 244, 9 N. W. 2d 193.

The evidence in this case measured by this rule without question sustains the contention of appellant. There is no word of testimony in the bill of exceptions in proof of any one of the essential elements of proof necessary to sustain a charge of undue influence except that of opportunity and that is very remote.

It is urged by appellees that appellant, having requested instructions on undue influence, has waived the right to object to its submission.

On the record this contention is without merit. At the conclusion of all of the evidence appellant made the following motion which appears in the bill of exceptions: "Proponent moves that there be no reference to undue influence used in the argument of this case to the jury for the reason there has been no evidence offered by the contestants on the allegation of undue influence exerted on the deceased, Lizzie Witte." This motion was overruled.

It is true that this motion does not in terms request that the issue of undue influence be withdrawn from consideration but it is a sufficient challenge to require the court to act judicially upon, and determine as a matter of law, whether or not the issue was one requiring submission. The ruling on the motion was sufficient as a declaration that this issue would be submitted.

Having been thus informed by the ruling on this motion that the issue of undue influence would be submitted, the request thereafter for instructions thereon cannot properly be considered as a waiver of the right to assert that the issue was without support in the evidence. *Sorensen v. Sorensen,* 68 Neb. 509, 103 N. W. 455; *Haslam v. Barge,* 69 Neb. 644, 96 N. W. 245; *Laf Ferry v. Chicago, B. & Q. R. Co.,* 114 Neb. 219, 206 N. W. 737.

Under the authorities there can be no question that the submission of the issue of undue influence was, under the facts as disclosed by the record, error. *In re Estate of Kajewski,* 134 Neb. 485, 279 N. W. 185.

It is further the holding of the authorities that the submission of issues upon which there is insufficient evidence to sustain them, along with issues which are sustained by sufficient evidence is generally prejudicial and invariably ground for reversal. A late expression of the court on this question is found in *Johnson v. Anoka-Butte Lumber Co.,* 141 Neb. 851, 5 N. W. 2d 114, as follows: "It is the duty of trial courts to determine the issues upon which there is competent evidence and submit them, and them only, to the jury. The submission of issues upon which the evidence is insufficient to sustain an affirmative finding is generally very prejudicial and invariably results in a second trial."

The next assignment of error to which attention is given is the one containing the contention that the court should have sustained the motion of appellant to set aside the verdict of the jury and render judgment ordering the admission of the will to probate.

The effect of the motion is to say that there was not sufficient evidence to sustain the contention, hereinbefore con-

sidered, that the will was the result of undue influence and neither was the evidence sufficient to sustain the contention that Lizzie Witte was incompetent to make a will at the time the instrument in question was made and executed.

In the determination of the question of whether or not a will shall be admitted to probate which is objected to on the ground that the testator lacked sufficient mental capacity to make the will, certain rules of evidence and certain other rules relating to the meaning and definition of mental capacity sufficient for making of a valid will must be borne in mind. It appears appropriate to set them forth here as a preliminary to a discussion of the assignment of error under consideration.

"A legatee or devisee who seeks probate of a claimed will carries the burden of alleging and proving, not only that the testator was possessed of authority and capacity to make the will, but also that the instrument is in legal form, * * * ." *In re Estate of Strelow,* 117 Neb. 168, 220 N. W. 251. See, also, *In re Estate of Slattery,* 125 Neb. 194, 249 N. W. 597; *In re Estate of Wotke,* 133 Neb. 739, 277 N. W. 45; *In re Estate of Bose,* 136 Neb. 156, 285 N. W. 319; *In re Estate of Hagan,* 143 Neb. 459, 9 N. W. 2d 794.

In the first instance the proponent is required to make a *prima facie* case as to the testamentary capacity. Thereafter in order to defeat the will it is necessary for contestants to introduce sufficient evidence to overcome the presumption arising out of the *prima facie* case made by the proponents. Once the presumption is overcome the burden of going ahead and proving by a preponderance of the evidence that the testator did have sufficient mental capacity to make a will devolves upon the proponent. In the case of *In re Estate of Bayer,* 119 Neb. 191, 227 N. W. 928, it is said: "The proponents having established a *prima facie* case as to testamentary capacity of the deceased, it is necessary, in order to defeat the will, that the contestants introduce sufficient evidence to overcome the presumption arising out of the *prima facie* case made by proponents. The burden of proof does not shift, but the burden of go-

ing ahead, as some authorities put it, does." See, also, *Seebrock v. Fedawa,* 30 Neb. 424, 46 N. W. 650; *In re Estate of Kubat,* 109 Neb. 671, 192 N. W. 202.

A person who understands the nature of his acts, the extent of his property, the proposed disposition of it, and the natural objects of his bounty, is competent to make a will. *Spier v. Spier,* 99 Neb. 853, 157 N. W. 1014; *In re Estate of Kubat, supra; In re Estate of Kajewski, supra; In re Estate of Bose, supra; In re Estate of Hagan, supra.*

From the record it is clear that the evidence of the proponent of the will was sufficient to bring into existence the presumption that Lizzie Witte had sufficient mental capacity to make the will in question. Passing this then the assignment under consideration calls for a determination of the question of whether or not the evidence of contestants was sufficient to overcome the presumption flowing from the *prima facie* showing of proponent that the said Lizzie Witte had the requisite mental capacity when she made the will. The weight of the evidence, if the presumption was overcome, was not for determination by the court nor is it for this court but was one for a jury. *In re Estate of Kerr,* 117 Neb. 630, 222 N. W. 63; *In re Estate of Bayer, supra.* As stated in the opinion in the last case cited: "The question directly before us in this case is whether, upon the proponents having established a *prima facie* case, the contestants offered any evidence tending to prove mental incapacity sufficient to sustain the verdict of the jury."

It is clearly apparent from an analysis of the rules stated that in order to have a submission to a jury of the question of the competency of Lizzie Witte to make the will in question, the burden of going ahead was upon the objectors to, by competent evidence, negative one or more of the following propositions: (1) That she understood the nature of her acts, (2) that she knew the extent of her property, (3) that she understood the proposed disposition of her estate, or (4) that she knew the natural objects of her bounty.

It may be said positively here that on the trial there was no direct attempt made by the contestants to negative

these propositions. Fairly analyzed the direct evidence of contestants supports a conclusion that she was in possession of all four of these mental qualities and qualifications. Conclusively, on the evidence, she knew her children and the extent of her property. There is nothing from which a legitimate inference could be drawn that she did not understand the disposition proposed or the nature of the disposition.

In support of the claim of the contestants that Lizzie Witte did not have the requisite mental capacity to make a will the record discloses that two witnesses gave it as their opinion that she did not. One was a laywoman and the other a physician and surgeon who had attended her professionally for a considerable period of time.

Analyzed in the light of the rule announced by the decisions of this court which permits a lay witness under certain circumstances to give opinion testimony as to the mental capacity of a deceased testator the opinion of this laywoman must be considered as having no weight as evidence.

The rule is stated as follows in *Bankers Life Ins. Co. v. Aron*, 133 Neb. 187, 273 N. W. 280, as follows: "It is a settled rule of law in this state that a nonexpert witness who is shown to have had a more or less extended intimate acquaintance with a person may be permitted to state his opinion as to the mental condition of that person, if said condition becomes a material subject of inquiry, by giving the facts and circumstances upon which the opinion is based." See, also, *In re Estate of Wilson*, 78 Neb. 758, 111 N. W. 788; *Torske v. State*, 123 Neb. 161, 242 N. W. 408; *Kehl v. Omaha Nat. Bank*, 126 Neb. 695, 254 N. W. 397. Of course it must follow that the facts and circumstances testified to by the witness shall be sufficient upon which to base an opinion.

A further rule which we think ought to be announced in relation to the mental capacity involved in the making of a will, since mental capacity in this situation involves different considerations than are found in other situations wherein mental capacity is involved, is hereby announced.

It is, that it must appear that the witness in giving his or her opinion as to mental capacity must have in mind the quality of mental capacity essential to the making of a valid will, that is whether or not the testator understood the nature of the acts, knew the extent of the property, understood the proposed disposition, and knew the objects of the bounty.

The witness here related no fact or set of facts from which an opinion or inference could be drawn that Lizzie Witte lacked mental capacity to make a will. She testified to no fact which would indicate that she was in anywise mentally afflicted or infirm. She was allowed to give her opinion, over appropriate objection, without anything to indicate that she was informed as to the qualities of mind constituting mental capacity to make a will or lack thereof which renders one incompetent to make a will.

The only other witness for the contestants who testified with regard to the mental capacity of the testatrix to make a will was a physician and surgeon of Nebraska City, Nebraska, who had cared for her in a professional capacity for a considerable period of time and who had negotiated with her with regard to a proposed disposition of some of her real estate. It may reasonably be said that by reason of his training and experience, as shown by the record, he had expert knowledge on the mental effects of the infirmities attendant upon advancing years.

As an expert witness in this field this witness would be permitted to give his opinion of the mental competency to make a will provided, of course, it was predicated on a proper and sufficient foundation. He gave it as his opinion that she was incompetent to make a will. *Sioux City & P. R. Co. v. Finlayson,* 16 Neb. 578, 20 N. W. 860; *Davis v. School District,* 84 Neb. 858, 122 N. W. 38.

The opinion of a medical expert witness must be based upon one or more of the following: Examination and observation of the person who is the subject of the inquiry, examination and history, or supposed facts of the existence of which there is evidence. *Goken v. Dallugge,* 72

Neb. 16, 99 N. W. 818; *Rathjen v. Woodmen Accident Assn.*, 93 Neb. 629, 141 N. W. 815; *Travelers' Ins. Co. v. Person*, 58 Fed. 2d 210; *Watkins v. Brunswick Restaurant Co.*, 123 Neb. 212, 242 N. W. 439.

With the latter two propositions we are not concerned in this case. The testimony of this witness for its factual background is dependent upon examination and observation.

Like in the case of the nonexpert witness, from a careful examination of the record, we have concluded that the testimony of this doctor does not disclose facts supporting a reasonable inference that the testatrix was incompetent to make her will. There is nothing in it from which an inference could be drawn that she did not understand the nature of her acts, that she did not comprehend the extent of her property, that she did not understand the proposed disposition, or that she did not know the objects of her bounty.

Again, as in the case of the nonexpert witness, there is nothing in the record to indicate that this witness, in giving his opinion that Lizzie Witte was incompetent, gave it with reference to the essential mental requisites necessary to the making of a valid will.

In substance the evidence on which the witness based his opinion was the following: That Lizzie Witte was about the age of 74 years in 1941; that she had hardening of the arteries, called senile arteriosclerosis of a type known as senile cortical devastation, defined as malignant and progressive deterioration of the gray matter of the cortex or brain; that malignant means "that it will do its evil eventually"; that she was not demented; that she had attacks in the nature of epilepsy; that these were only temporarily disabling; that she was nervous, had headaches and at times became dizzy; that her ability to hear had diminished; that her ability to remember had lessened; that she was irritable; that she carried on normal household activities such as cooking, cleaning, marketing and caring for herself in her normal and customary manner, he said, by instinct rather than by the processes of an ordered and normal

mind; he mentioned no abnormal mental reaction; he said that she was "in that barn but not in the stall" of senile dementia. Just what was meant is not quite clear unless it be that she was approaching but had not arrived at a state called senile dementia.

Clearly the facts to which this witness testified oppose rather than support his expressed opinion.

From an examination of the other evidence alone, or coupled with that of these two witnesses, there is nothing which would support a reasonable inference that Lizzie Witte did not have sufficient mental capacity to make a will. The presumption of competency flowing from the *prima facie* showing of the proponent has not been overcome. The verdict of the jury is not sustained.

The conclusions arrived at with regard to the two assignments discussed render a consideration of the other assignments of error unnecessary.

The cause is reversed and remanded to the district court with directions to the district court to render judgment overruling the objections to the will and remanding the cause to the county court with directions to admit it to probate.

REVERSED, WITH DIRECTIONS.

17 N. W. 2d 477

The following supplemental opinion was filed February 2, 1945. *Motion for rehearing denied and cause reversed.*

YEAGER, J.

On consideration of the motion for rehearing of this case it has been concluded that the original opinion should be adhered to in every respect except the last and final paragraph thereof. In that paragraph the direction to the district court was erroneous in directing action in the district court and the county court. We conclude that in the light of our finding that the only power of this court was to reverse and remand for further proceedings. See *In re Estate of Marsh,* p. 559, *post,* 17 N. W. 2d 471. The paragraph is hereby withdrawn and the following substituted therefor:

The cause is reversed and remanded to the district court for further proceedings.

MOTION FOR REHEARING DENIED, AND CAUSE REVERSED.