**Richard ANDREWS, Appellee,**

**v.**

**Leroy R. STRUBLE, Appellant.**

**Leroy R. STRUBLE, Appellant-
Cross Petitioner,**

**v.**

**Gary GOODBURN and Anderson Construc-
tion Co., a Corporation, Appellees-
Cross Defendants.**

**No. 53848.**

Supreme Court of Iowa.

June 23, 1970.

Paul J. Yaneff, Sioux City, for appellant.

Frank Jacobs, of Sifford, Wadden & Davis, Sioux City, for appellees-cross defendants.

John W. Gleysteen and William E. Kunze, of Gleysteen, Nelson, Harper, Kunze & Eidsmoe, Sioux City, for appellee.

MASON, Justice.

This appeal is the result of a lawsuit following an automobile collision. Involved is a law action instituted by plaintiff Richard Andrews against LeRoy R. Struble for personal injuries and property damages and defendant's cross-petition seeking contribution in one division and indemnity in the other from Gary Goodburn and Anderson Construction Company, Inc., operator and owner respectively of a third vehicle, by reason of plaintiff's action. October 5, 1966, about 6:30 a. m. Andrews was driving his pickup truck north on Highway 31. Approximately a mile north of Smithland in Woodbury County a collision occurred between plaintiff's vehicle and defendant's vehicle parked in the east lane of the traveled portion of the highway, headed north. Plaintiff sustained personal injuries and his motor vehicle was demolished.

I. About 6 a. m. plaintiff left his home in Moorhead to drive to work west of Anthon about 43 miles where he was employed by Anderson Construction Company. To get to his jobsite plaintiff went north through Smithland on a 22-foot-wide blacktop highway. As he left Smithland the road was good and clear, visibility good, although completely dark. He had his headlights on. North of Smithland the highway curves to the left and then straightens out north. As plaintiff came out of the curve he could see the point where the accident later occurred. He saw headlights of a car which appeared to be approaching from the north. When plaintiff first saw this car, it was about a quarter mile away and he could not

definitely tell if it was moving. As plaintiff proceeded toward the car, the lights affected him a little, blinding him to a certain extent, and he slowed down by letting up on the accelerator. As he got about even with the oncoming car he first saw defendant's pickup truck without taillights in the east lane. He was 20 to 30 feet from the vehicle before realizing it was stopped or moving very slowly. He immediately stepped on the brake, but the vehicles collided.

Andrews testified he saw no flares or reflectors at the scene after the accident. It had been his experience that when following cars at night with their taillights on he could keep them in view when meeting oncoming traffic. At the point of the accident both shoulders adjacent to the highway were ten feet wide, each lane 11 feet. It was his opinion that the lights of the oncoming vehicle had been on high beam.

Defendant Struble was also going to work in Anthon at the time of the accident. He left his home approximately two miles from the point of the accident going north on Highway 31 from Smithland. After traversing the curve his pickup began to sputter, which he eventually determined was caused by an empty fuel tank. Having been driving between 50 to 55 m. p. h., he first coasted by a curve sign then eased off the blacktop, but because it felt a little soft, he pulled his vehicle back toward the paved roadway. When the automobile came to rest about 200 feet north of the curve, its right wheels were off the pavement. The pickup, seven to eight feet wide, extended onto the paved portion of the highway five to six feet. At that point he left his parking lights on, placing reflectors in front, at the side and to the rear of the vehicle (Code section 321.448). When placing the rear reflectors he noticed the taillights on his vehicle were working. He got a three-gallon gas can out of the pickup box, poured part of it in the gas tank, lifted the hood and poured another portion of it in the carburetor. Next he

picked up the reflectors, placing them under the seat of the cab.

After Struble had been parked for about ten minutes Goodburn, another Anderson employee driving his employer's pickup, came from the opposite direction, stopped in the west lane of traffic "right across" from Struble's pickup, with the front end of the Anderson vehicle possibly three to four feet south of the rear of the Struble truck. There were approximately five to six feet between the two pickups which blocked the entire road for any approaching traffic. Goodburn inquired if Struble needed help. Defendant told him he didn't believe so, that he didn't believe he'd have any further trouble, but Goodburn volunteered to "stick around until I see what you are doing".

While the parties talked for a few minutes, Goodburn's headlights remained on. There were no reflectors out. When headlights of an approaching vehicle became visible Struble informed Goodburn that he should pull his automobile off the road since their vehicles were blocking the entire road. Entering his own vehicle with the intention of starting it and driving away, Struble attempted to turn the switch on, but before he could, the collision occurred. He maintains that at no time had he turned the taillights off before the accident.

On cross-examination defendant Struble admitted after his vehicle stopped he did not examine the condition of the shoulder or attempt to use the pickup's starter and manual transmission to move it off the paved portion of the highway.

Deputy Sheriff Phelps arrived at the scene of the accident just after dawn. His examination at the scene disclosed there was a good, solid shoulder on the road. It was his opinion from examination of the debris and damage to the vehicles that defendant Struble's pickup had been parked in a stopped position at the time of impact with all four wheels on the pavement.

Dr. Albert D. Blenderman, Andrews' attending physician, testified that plaintiff told him at the hospital the lights of the car coming from the opposite direction had blinded him to the fact the pickup truck was standing on the highway.

II. Plaintiff alleged defendant's negligence in several respects was the proximate cause of his damage. In view of defendant's concession in written argument that the evidence generated a jury question, we do not repeat in detail the specifications submitted. Generally they contain essential allegations constituting violation of Code sections 321.354, 321.384, 321.387, 321.395 and 321.448.

Defendant in answer specifically denied plaintiff's allegations and asserted a proximate cause of plaintiff's damages was his own negligence in failing to have his car under control and keep a proper lookout; and in driving at an excessive speed under the circumstances to permit him to stop within the assured clear distance ahead.

Struble then filed his cross-petition as amended. After alleging necessary and essential allegations to state a cause for contribution and indemnity, he asserted each cross-defendant was negligent in (a) failing to dim his headlights (section 321.-415), (b) stopping, parking and leaving his motor vehicle on the main traveled portion of the highway and failing and preventing a clear and unobstructed width of at least twenty feet of such part of the highway opposite said plaintiff vehicle (section 321.354), (c) stopping, parking and leaving his automobile on the main traveled portion of said highway when a clear view of said automobile was not available for a distance of 200 feet (section 321.354), (d) failing to warn Andrews of the presence of Struble's vehicle after stopping alongside it and obstructing its appearance, (e) failing to keep a proper lookout, (f) being otherwise careless and negligent and (g) failing to exercise due care under the existing circumstances.

Defendant's motion for directed verdict made at the close of plaintiff's evidence and renewed at the close of all evidence was overruled and Andrews' case submitted to the jury.

Cross-defendants moved for a directed verdict at the close of plaintiff's evidence as against plaintiff and against defendant on his cross-petition. There being no cause asserted by Andrews against cross-defendants, the motion was sustained as to him. The motion as to cross-petitioner was overruled.

After defendant rested, cross-defendants renewed their motion for directed verdict which was sustained. Plaintiff then called Goodburn as his witness.

Following a favorable jury verdict for plaintiff, defendants moved for new trial or judgment notwithstanding the verdict. In another motion defendant moved for new trial and judgment notwithstanding in his action against Goodburn and Anderson Construction. All motions were overruled.

Defendant appeals from both judgments.

III. As stated, this is a law action. Our appellate jurisdiction is not de novo but is confined to correction of errors assigned. Rule 334, R.C.P.

We consider first defendant's appeal from the trial court's rulings in regard to cross-defendants Goodburn and Anderson Construction Company. As to this aspect of the lawsuit defendant assigns four errors argued in two divisions. Three errors are contained in the first division. Summarized, they challenge correctness of the trial court's ruling in directing a verdict against defendant on his cross-petition.

Defendant maintains there was sufficient evidence to generate a jury question as to whether cross-defendants were negligent in failing to use their low beam headlights in violation of sections 321.384 and 321.415. Further, that cross-defendants were in vio-

lation of section 321.354 for blocking the lane opposite where defendant had stopped his vehicle. He points out that statutory rules of the road are cumulative and do not abrogate common law duties. They set the minimum, not the maximum, standard of care. Struble contends cross-defendants were concurring tort feasors and also responsible for plaintiff's damages. They had a duty to exercise reasonable care under the circumstances. Whether their negligence was a proximate cause of the accident was for the jury.

■ In considering the propriety of a motion for directed verdict the court views the evidence in the light most favorable to the party against whom the motion was made. Rule 344(f)(2), R.C.P.

■ Whether a specification of negligence should be submitted depends, of course, upon the evidence which supports it. Cavanaugh v. Jepson, 167 N.W.2d 616, 619 (Iowa 1969).

■ We need consider only the evidence favorable to cross-petitioner, whether or not it was contradicted. Tuttle v. Longnecker, 258 Iowa 393, 396, 138 N.W.2d 851, 853, and Hall v. Wright, 261 Iowa 758, 770, 156 N.W.2d 661, 668–669.

■ Our function in review is to examine the evidence to determine, not whether it proves cross-petition defendants negligent in the manner asserted against them, but whether it makes a sufficient showing so that the trial court would be warranted in submitting the question to the jury and the jury in the exercise of its function as the trier of facts be justified in finding them negligent in the particulars submitted. Bradt v. Grell Construction, Inc., 161 N.W.2d 336, 343 (Iowa 1968).

The following Code sections are involved in cross-petitioner's specifications of negligence:

Section 321.354 provides in part:

*"Stopping on traveled way.* Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of two hundred feet in each direction upon such highway; * * *."

The part of section 321.384 pertinent provides:

"Every motor vehicle upon a highway within the state, at any time from sunset to sunrise, * * * shall display lighted head lamps as provided in section 321.415, * * *."

Section 321.415 contains this:

" * * *.

"Whenever a driver of a vehicle approaches an oncoming vehicle within five hundred feet, such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver. The lowermost distribution of light, or composite beam, specified in subsection 2 of section 321.409 shall be deemed to avoid glare at all times, regardless of road contour and loading. * * *."

"With the exception of violation of section 321.298 requiring vehicles meeting each other to give half the traveled way by turning to the right, which constitutes merely prima facie negligence, violation without legal excuse of other statutes regulating the law of the road is negligence as a matter of law. Kisling v. Thierman, 214 Iowa 911, 915–916, 243 N.W. 552, 554; * * *." Hedges v. Conder, 166 N.W.2d 844, 850, and citations.

The evidence when viewed as directed by rule 344(f)(2), R.C.P., reveals Struble stopped his seven-to-eight-foot-wide vehicle with all four wheels on the traveled portion of an eleven-foot lane when there was a good, solid, ten-foot shoulder adjacent to the highway. There were no taillights visible on his vehicle and during some period of time no flares were out, although it was between sunset and sunrise. Coupled with this is Goodburn's approaching the scene from the north with his lights on high beam, stopping his vehicle in the parallel lane almost right across from Struble's pickup. This is the situation confronting plaintiff as he approached from the south.

A jury would have been justified in concluding Goodburn did not exercise due care under the foregoing circumstances in placing his vehicle in a position further obscuring Struble's truck and blocking alternative lane of travel for an oncoming vehicle; these were additional causal factors in the chain of events leading to the collision. Struble's original wrong and Goodburn's subsequent wrongful acts may both have been proximate causes.

Even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered. Rule 344(f) (17), R.C.P. See Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 642 (Iowa 1969).

Of course, negligence to be actionable must be a proximate cause of the injury. Adams v. Deur, 173 N.W.2d 100, 111 (Iowa 1969), and citations.

"In several recent decisions we have repeated the definition of proximate cause from Restatement, Second, Torts, section 431:

"'The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm' [Citing authorities]." Hedges v. Conder, 166 N.W. 2d 844, 854 (Iowa 1969).

There may be more than one proximate cause of an accident or injury. Furthermore, proximate negligence need not be the sole cause of an injury. Concurrent negligence may be a proximate cause. Adams v. Deur, supra.

Generally, questions of proximate cause are for the jury; and it is only in the exceptional case that they may be decided as a matter of law. Rule 344(f) (10), R.C.P.

The trial court in directing a verdict for the cross-defendants on the cross-petition had to hold as a matter of law any negligence of Goodburn, whether resulting from violation of a statutory rule of the road or a common law duty, was not a proximate cause of the accident resulting in Andrews' injury.

This is not the exceptional case referred to in rule 344(f) (10), R.C.P., and the trial court erred in directing the verdict.

IV. Because of the necessity of remand on the cross-petition we consider the error urged in defendant's other division in regard to cross-petitioners. He contends the court erred in overruling that portion of his motion in limine concerning participation of third-party defendants in jury selection and permitting them to participate in voir dire of potential jurors, exercise peremptory challenges and strikes and make an opening statement to the jury. Struble contends prejudice resulted in his being required to divide his peremptory challenges and strikes with cross-defendants.

The record shows Andrews and Struble each demanded a jury trial without indicating the date of filing. However, someplace along the line these demands were filed since reference is made to them in the record after defendant's answer but before his cross-petition. Cross-defendants at no

time filed a demand for jury trial. Rule 177, R.C.P., prescribes the manner of obtaining a jury trial under our procedure.

Defendant does not challenge the right to a jury trial on submissible issues of fact arising from the cross-petition for indemnity or contribution, but urges in effect that his demand for a jury trial of the issues between him and Andrews does not embrace the third-party issues between him and Goodburn and Anderson Construction Company so as to permit them to participate in selection of the jury.

Struble relies on Brandt v. Olson, ND Iowa ED, 190 F.Supp. 683. The decision there does not aid him. The question there in dispute related to the matter of a jury trial on the third-party claim for indemnity or contribution with the third-party defendant there contending the issues between him and cross-petitioners were not properly triable to a jury. Only plaintiff had demanded a jury trial. The court held the submissible issues of fact in connection with the claim for indemnity or contribution were triable by jury and granted the cross-petitioners leave to make a belated request for a jury trial as to those issues, which was granted.

The factual situation involved here is analogous to that in the illustration set out in McAndrews v. United States Lines Company, SD N.Y., 167 F.Supp. 41, 43, from 5 Moore's Federal Practice, page 344, note 2. In this illustration the author in assuming A sues X but makes no demand for jury trial, but X makes a general demand at the time he serves both his answer on A and the third-party complaint on Y, declares it should follow then that X has demanded jury trial for the issues between him and A and between him and Y, and both A and Y may rely thereon and need make no demand. We agree no further demand was required.

■ In Katcher v. Heidenwirth, 254 Iowa 454, 462, 118 N.W.2d 52, 57, we said, " * * * A demand for a jury by one party of course inures to the benefit of the other.

* * * [Citing authority]." Struble's jury demand was not limited to a specific issue, rule 177(c), R.C.P. Struble's contention is without merit.

As further support for our position see 2B Barron and Holtzoff, Federal Practice and Procedure, Rules Ed., section 877, interpreting rule 38 of the Federal Rules of Civil Procedure.

V. We turn now to Struble's appeal from the judgment rendered on the favorable verdict for Andrews. The errors assigned for reversal concern (1) objections to instructions given and failure to give requested instructions, (2) a motion for a new trial and mistrial, (3) rulings on admissibility of evidence, (4) alleged improper conduct by the jury and (5) the assertion the cumulative effect of these errors denied defendant substantial justice.

VI. Defendant Struble alleges the trial court erred in giving instructions 16 and 17. Rule 196, R.C.P., provides in pertinent part:

" * * * [A]ll objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal. * * *."

■ It is incumbent on the objecting party to point out wherein he contends the instruction is wrong so the trial court may have opportunity to correct it. Schall v. Lorenzen, 166 N.W.2d 795, 797 (Iowa 1969), and citations.

The basis of Struble's objection to instruction 16 at trial was that it is not a correct statement of the law in that it tends to accentuate and repeat the matters of negligence, concurring negligence and individual negligence of the various parties and is repetition of a previous instruction and tends to overaccentuate defendant's responsibility and minimize plaintiff's responsibility.

He also objected to the instruction as unduly prejudicing him by reason of the obligations and duties that existed between him and cross-defendants and is entirely immaterial to the issue in the cause.

He concedes that while instruction 17 is a correct statement of the law, it is nothing more than repetition and emphasis of instruction 16.

Our consideration under this assignment is thus limited.

In instruction 16 the jury was told where an accident occurs as the result of the negligence of more than one person a plaintiff may sue and recover from one or all such persons. Plaintiff chose to sue only defendant Struble which was his right under the law. Plaintiff could recover from defendant if the jury found by a preponderance of the evidence defendant Struble was negligent, that such negligence, if any, was the proximate cause of the collision and that the asserted defense of contributory negligence was not established. Concurring negligence of other persons would not affect plaintiff's right.

In instruction 16 the jury was advised that defendant Struble had alleged the negligence of Gary Goodburn and Anderson Construction, Inc., but failed to prove these allegations. As a result, the court as a matter of law dismissed defendant's claims against them.

The jury was told in instruction 17 that if it found the collision was caused solely and exclusively by the negligence, if any, of Struble and such negligence was the proximate cause of the collision plaintiff was entitled to recover from Struble. If the collision was caused partly or concurrently by some other person, this would not relieve Struble of liability as long as his acts remained a proximate or concurring cause of the collision.

Instructions 16 and 17 were not repetitious in that instruction 16 informed the jury that if it found the negligence of Struble *and other persons* proximately caus-

ed plaintiff's injury this concurring negligence would not affect plaintiff's right to recover solely from defendant Struble. Instruction 17 informed the jury if it found the negligence of defendant Struble *was the sole* proximate cause of the collision, plaintiff was entitled to recover.

Only the statement in instruction 17 that if the collision was caused partly or concurrently by some other person it would not relieve defendant Struble of liability so long as the acts remained a proximate or concurring cause of the collision was repetitious and that statement was of some aid in clarifying the requirement of proximate cause.

 While we recognize that instructions should not give undue emphasis to any phase of the case favorable to either side, and even correct statements of the law, if repeated to the point of undue emphasis, may constitute reversible error, Miller v. Town of Ankeny, 253 Iowa 1055, 1061, 114 N.W.2d 910, 913–914, and citations; Wagaman v. Ryan, 258 Iowa 1352, 1362, 142 N.W.2d 413, 419, and citations, such did not occur here.

██ Struble's contention that instruction 16 prevented him from effectively arguing the fault was not his but that of cross-defendants is without merit since the court did not tell the jury in this instruction that it had found cross-defendants free of negligence as a matter of law as Struble asserts in argument, only that he had failed to prove his allegations of negligence.

As a matter of fact, it appears from the record Struble argued this phase of the liability issue rather fully.

VII. In another assignment Struble contends the court erred in overruling objection to counsel's argument to the jury, in failing to grant a mistrial or a new trial because of remarks of counsel during argument. The final arguments were reported and comprise 100 pages in the record. In support of this assignment reference is made to six separate incidents, all occurred

in plaintiff's closing argument. As to three, no objections were raised when they were made. Complaint was first made of two of them in Struble's motion for mistrial, made at the close of plaintiff's argument but before submission, and the other in his motion for new trial. The prejudicial nature of the three remaining statements was urged by objection at the time they were made.

The incident first objected to in Struble's motion for new trial presents no question here.

■ When an improper remark is made by counsel in the course of jury argument, it is the duty of the party aggrieved to timely voice objection. This is to give the trial court an opportunity to admonish counsel or instruct the jury as it may see fit. Rasmussen v. Thilges, 174 N.W.2d 384, 390–391 (Iowa 1970), and citations; 88 C.J.S. Trial § 196, pages 382–383; 53 Am.Jur., Trial, section 505, page 407.

■ Since the remedy for misconduct on the part of anyone during the progress of a trial is to call the attention of the presiding judge to the alleged misconduct and move by some proper procedure to have the matter corrected, it is not timely to await the result of the trial and then first complain by allegation in motion for new trial in the event of an adverse verdict. Connelly v. Nolte, 237 Iowa 114, 126, 21 N.W.2d 311, 317. See also Kasey v. Suburban Gas Heat of Kennewick, Inc., 60 Wash.2d 468, 477, 374 P.2d 549, 554.

Because of a factual distinction, Burke v. Reiter, 241 Iowa 807, 42 N.W.2d 907, is not pertinent here.

■ Only if probable harm or resulting prejudice cannot be rectified by admonition or further instruction will the alleged misconduct be passed on in absence of timely objection. Brown v. Friedman, Tex. Civ.App., 451 S.W.2d 588, 589.

"We have recognized that misconduct in argument may be so flagrantly improper and evidently prejudicial it may be a ground for new trial even though no exception was taken when the argument was made. * * * [Citing authorities]." Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 717, 107 N.W.2d 85, 91.

■ The claimed misconduct here is not of that kind. In pertinent part it follows:

" * * * I haven't singled * * * [Mr. Struble] out when I thought maybe someone else was at fault, too. I have merely taken the facts as I have found them and tried to analyze it and see who I thought was responsible for this accident and that is the person that we sued after Mr. Andrews told me his story. He called me and I went down to talk to him when he was at home with his leg in a cast and he told me about this. And I investigated it thoroughly. I came to the conclusion that one person was responsible and that was Mr. Struble."

VIII. The remaining incidents complained of fall into two categories. In one are the two first complained of in Struble's motion for mistrial made before submission, in the other the three to which objection was urged when they were made.

In support of the trial court's ruling challenged by this assignment plaintiff urges in one brief point that defendant waived his right to object to those incidents where no complaint was raised when the remarks were made and cites Connelly v. Nolte, supra, in support. That case does not reach the question of timeliness of an objection raised for the first time in motion for mistrial. There is the additional fact only the opening and closing arguments of appellee were reported there.

■ We do not agree with plaintiff's contention that those incidents complained of for the first time in motion for mistrial made before submission were waived.

■ Where the closing arguments are reported, certified and constitute a part of

the record, objection to the remarks of counsel during final jury argument urged at the close of the argument in motion for mistrial made before submission to the jury is timely. In Division VII we held submission of the case to the jury without objection to such misconduct was not timely when raised for the first time in motion for new trial since, for one thing, it indicates willingness of counsel to take his chances on a favorable verdict and constitutes a waiver of the misconduct. However, objection at the close of the argument and before submission to the jury is in no sense a waiver on any such basis. The court's reasoning in Sandomierski v. Fixemer, 163 Neb. 716, 719, 81 N.W.2d 142, 145, is logically sound where it said:

" * * * It could well be that any one improper statement would not constitute prejudicial error, while the cumulative effect of several would give rise to a claim of prejudice. Continued objections by counsel to prejudicial statements of opposing counsel in his argument to the jury could place the former in a less favorable position with the jury, and thus impose an unfortunate consequence upon his client which was actually caused by the wrongful conduct of opposing counsel. This he is not required to do. Attorneys engaged in the trial of cases to a jury know or ought to know the purposes of arguments to juries. When they depart from the legitimate purpose of properly presenting the evidence and the conclusions to be drawn therefrom, they must assume the responsibility for such improper conduct. They are in no position to demand that opposing counsel shall jeopardize his position with the jury by constant objections to their improper conduct."

Shover v. Iowa Lutheran Hospital, 252 Iowa at 716–717, 107 N.W.2d at 91, in quoting with approval from Agans v. General Mills, Inc., 242 Iowa 978, 983–985, 48 N.W. 2d 242, 246, furnishes support for the proposition a party may move for mistrial at the time an improper argument is made or at the close of the argument.

For a collection of our decisions discussing the proper way to make a record of an attorney's misconduct in jury argument where all arguments are not reported and certified, see Connelly v. Nolte, 237 Iowa at 127–128, 21 N.W.2d at 317–318. When the manner suggested in those decisions for preserving an alleged complaint of misconduct of counsel in final argument is followed, objection urged for the first time in motion for mistrial made before submission is timely. No reason is apparent why a different rule should apply under such circumstances.

This does not mean it is not proper for counsel to object to misconduct of opposing counsel in argument and obtain a ruling when the alleged misconduct occurs, should he elect to do so. Our discussion here concerns only a question of timeliness.

It must be remembered the facts here do not involve a case where the alleged misconduct occurred in opening statements.

IX. Bearing on defendant's contention directed against the five incidents timely raised is this statement in Rasmussen v. Thilges, 174 N.W.2d at 391:

"The trial court has broad discretion in passing on the propriety of jury argument and we will not reverse unless there has been a clear abuse of such discretion. Before a new trial will be granted for misconduct in argument it must appear prejudice resulted or a different result could have been probable but for such misconduct. * * * [Citing authorities]. We do not believe the trial court abused its discretion or that a different result would have been probable but for the alleged misconduct."

In view of defendant's concession in written argument that a jury question had been generated on plaintiff's cause of action, his further assertion "the amount of the award is contested only so far as it was tainted or influenced by evidence introduced and the instructions given on loss of wages and earning capacity" and his

failure to contend counsel's arguments caused an excessive verdict or one resulting from passion and prejudice, a different result was improbable. This assignment cannot be sustained.

X. Struble contends in another assignment the court erred in instructing on loss of earnings and earning capacity and in sustaining objection to his offer to show Andrews would have been unemployed shortly after the accident as far as Anderson Construction Company was concerned. He argues this ruling deprived him of his right to show plaintiff did not in fact suffer loss of wages during his convalescence since he would have been unemployed in any event because of the seasonal nature of his employment.

Plaintiff at time of the accident was a construction worker, operating heavy equipment for Anderson Construction Company, Inc. His weekly wage was $210 to $225. Prior to the accident he operated both motor graders and caterpillars, but after recovery from the accident it was difficult to operate a caterpillar because of the necessity to use his right leg on hydraulic pedals.

Evidence reveals plaintiff Andrews shattered his right knee cap in the accident. This necessitated removal of the knee cap, repair of the knee ligaments and an extended convalescence. He was off work from the date of the accident, October 5, 1966, until the middle of April 1967.

Dr. Blenderman, an orthopedic surgeon, testified that when surgical removal of the knee cap is necessary, the knee is not as good as it was before. Because there is not a good fulcrum to extend the knee, there is a 10 percent disability. The knee is not as stable.

■ Andrews testified several times on cross-examination that his work with Anderson was on a seasonal basis. He was not a 12-month man. In light of this admission the court's ruling on the objection to Struble's offer did not constitute prejudicial error requiring reversal.

■ Evidence showing the character of plaintiff's injuries, length of time he was disabled, and his earnings immediately prior to the accident justifies submission of an instruction permitting recovery of past loss earnings. Seitsinger v. Iowa City Elec. R. Co., 181 Iowa 739, 752, 165 N.W. 205, 208; Miller v. McCoy Truck Lines, Inc., supra, 243 Iowa at 489, 490, 52 N.W. 2d at 66; Barnard v. Cedar Rapids City Cab Co., 257 Iowa 734, 753–754, 133 N.W. 2d 884, 897.

In Anthes v. Anthes, 258 Iowa 260, 270, 139 N.W.2d 201, 208, this court said:

"The right to damages for impairment of earning capacity may otherwise be classified as impairment of ability to work and earn. It is determinable by the difference between the value of an individual's services, if working, as he would have been but for the injury, and the value of the services of an injured person, if working, in the future. 22 Am.Jur.2d, Damages, section 92, page 134. It is based upon capacity to earn, not on earnings alone."

In his contention defendant appears to overlook the fact that before the accident Andrews had the capacity to earn. As the result of injuries sustained, this capacity was completely destroyed for several months. The evidence shows that at age 61 he had a life expectancy of 15.44 years with a 10 percent permanent disability.

■ Even though plaintiff was not employed, he is entitled to full compensation for an impairment of this right. See in this regard 22 Am.Jur.2d, Damages, section 100, page 147–148, also Anthes v. Anthes, supra, where many of our prior decisions considering the issue of loss of earnings are set forth.

This contention is likewise without merit.

XI. In motion for a new trial defendant asserted jury misconduct claiming the

court erred in failing to grant a new trial because of misconduct of the jury in not following instructions and determining their award by gamble and speculation.

Attached to the motion was an affidavit of one juror. It in substance stated the jury followed the judge's instructions by not considering the negligence of Gary Goodburn. The verdict was arrived at by ballot but at no time did the jurors agree to be bound by the figure in advance.

A similar contention was rejected in Rasmussen v. Thilges, 174 N.W.2d at 389–390. The issue is fully discussed in that opinion and need not be repeated here. The conclusion reached there disposes of Struble's contention under this assignment.

XII. Struble also contends the court erred in refusing to give certain of his requested instructions. Included in the portion of rule 196, R.C.P., previously set out, is the provision requiring objection to failure to give requested instructions in order to preserve any claimed error. Because of defendant's failure to comply with this rule, this assignment presents nothing for consideration here.

XIII. We have considered all contentions raised by Struble in support of his assignments of error whether or not we have specifically referred to them in this opinion and find none that require reversal on his appeal from the judgment entered on the jury verdict in favor of Andrews.

As stated in Division III, Struble's appeal from dismissal of his cross-petition is reversed and that phase of the case is remanded for new trial.

The case is therefore—Affirmed in part, reversed in part and remanded with costs on appeal to be taxed one half to Struble and one half to cross-defendants.

All Justices concur.